FILED

MAY 23 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 08-50519 |
| Plaintiff - Appellee, | D.C. No. 2:05-cr-00198-VBF-1 |
| v. | Central District of California, Los Angeles |
| STEPHEN C. SAYRE, AKA Seal A, | |
| Defendant - Appellant. | ORDER |

Before: B. FLETCHER, REINHARDT, and WARDLAW, Circuit Judges.

The memorandum disposition filed on April 4, 2011 is withdrawn. A new

disposition is filed herewith. No petitions for rehearing will be entertained.

IT IS SO ORDERED.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>STEPHEN C. SAYRE, AKA Seal A,<br><br>Defendant - Appellant. | No. 08-50519<br><br>D.C. No. 2:05-cr-00198-VBF-1<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Valerie Baker Fairbank, District Judge, Presiding

Argued and Submitted March 8, 2011
Pasadena, California

Before: B. FLETCHER, REINHARDT, and WARDLAW, Circuit Judges.

Stephen Sayre appeals his conviction on one count of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 21. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

**I.**

The district court did not abuse its discretion in declining to give Sayre's proposed "total mix" materiality instruction. *See United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010). The court instructed the jury that "an act, statement or omission is material if there is a substantial likelihood a reasonable investor would have considered it important in deciding whether to buy, sell or hold the security." This definition is an accurate statement of the law and is supported by both Supreme Court and Ninth Circuit case law. *See, e.g.*, *Basic Inc. v. Levinson*, 485 U.S. 224 (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976); *Zweig v. Hearst Corp.*, 594 F.2d 1261 (9th Cir. 1979). The "total mix" definition is an

alternative means of expressing the materiality concept,[1] *see TSC Indus.*, 426 U.S. at 449, which it "further explain[s]," *see Basic*, 485 U.S. at 231-32.[2]

That the court did not define "misleading" at the jury's request is irrelevant, because by the time the jury asked for the definition, it had already voted on (and the court had already sealed) its guilty verdict on the count of conviction.

## II.

Nor did the district court abuse its discretion by declining to instruct the jury as to the meaning of "reasonable investor" and by rejecting Sayre's proposed

---

[1]In *Matrixx Initiatives, Inc. v. Siracusano*, --- U.S. ----, No. 09-1156, 2011 WL 977060 (March 22, 2011), the Supreme Court addressed the question of whether the materiality of scientific data hinges on its statistical significance. Although the Court employed the "total mix" standard for materiality, it did not address – much less decide – whether the alternative articulation of the standard in *Basic* was inapplicable.

[2]In *Zweig*, 594 F.2d at 1266, which presented similar facts, we defined materiality in a similar fashion. Contrary to Sayre's argument, *Zweig*'s definition was not overruled by *Chiarella v. United States*, 445 U.S. 222 (1980), because *Zweig* relied on *United States v. Chiarella*, 588 F.2d 1358 (2d Cir. 1978), only in considering who has a fiduciary duty to the market. *See Zweig*, 594 F.2d at 1267, 1267 n.9; *see also S.E.C. v. Murphy*, 626 F.2d 633, 652 n.23 (9th Cir. 1980). The *Zweig* materiality definition remains good law. *See, e.g., United States v. Jenkins*, --- F.3d ----, 2011 WL 208357, at *10 (9th Cir. Jan. 25, 2011); *United States v. Laurienti*, 611 F.3d 530, 541 (9th Cir. 2010). Indeed, the current Ninth Circuit model jury instructions resemble the *Zweig* definition. Ninth Circuit Manual of Model Criminal Instructions (2010) at § 9.9 ("A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making the decision to [purchase] [sell] securities.").

3

instruction 34, which defined a "reasonable investor" as one who "practices due diligence before making an investment." *See Hofus*, 598 F.3d at 1174. The term "reasonable investor" is a concept within the jury's ordinary experience and understanding. *See United States v. Tirouda*, 394 F.3d 683, 688-89 (9th Cir. 2005) (holding that concepts within a jury's ordinary experience need not be defined); *United States v. Somsamouth*, 352 F.3d 1271, 1275-76 (9th Cir. 2003) (same); *see also United States v. Dixon*, 201 F.3d 1223, 1231 (9th Cir. 2000) (holding that "commercial advantage" and "private financial gain" are terms within a jury's comprehension).

## III.

The district court did not abuse its discretion in excluding testimony from the defense expert witness regarding who qualifies as a "reasonable investor" and what sorts of information the "reasonable investor" relies upon. The expert told the court that he based his testimony on his "experience as a teacher and as someone working in this field as to what it is that makes prices rise." When the court asked whether the expert had relied upon any empirical data or any methodology, he repeated that he was "relying on [his] knowledge and experience." The district court correctly applied Federal Rule of Evidence 702 in excluding testimony it judged would not be both reliable and relevant. *See United*

4

*States v. Redlightning*, 624 F.3d 1090, 1111 (9th Cir. 2010). *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004), is inapposite because the expert witness there actually demonstrated the basis for his specialized knowledge of insurance industry standards. *See also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* [*v. Merrell Dow Pharms.*, 509 U.S. 579 (1993)] or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

## IV.

The court properly admitted the testimony of Sayre's brother and sister-in-law. Ordinarily, we review evidentiary rulings for abuse of discretion. *United States v. Hollis*, 490 F.3d 1149, 1152 (9th Cir. 2007). Because Sayre did not object at trial, we review for plain error. *United States v. Webster*, 623 F.3d 901, 905 (9th Cir. 2010). Any opinions Sayre's brother and sister-in-law offered regarding their concerns about Sayre's trading fall within Federal Rule of Evidence 701: their testimony was based on their experience and set the context for the messages Sayre left for his brother.

## V.

5

Viewed in the light most favorable to the prosecution, the evidence was sufficient to allow any rational trier of fact to find that there is a substantial likelihood that a reasonable investor would have considered Sayre's omissions important in deciding whether to buy, sell, or hold eConnect stock. *See United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). As Sayre failed to renew his motion for acquittal at the close of evidence, we "may review his . . . claim only to prevent a manifest miscarriage of justice or for plain error." *United States v. Gonzalez*, 528 F.3d 1207, 1210 (9th Cir. 2008).[3]

Viewed in the light most favorable to the prosecution, the evidence shows that the government's witness was a "reasonable investor." While she testified that she knew nothing about the stock market when she began investing in January of 2000, she had learned about investing by the time she relied on Sayre's March 8, 2000, investment opinion to purchase eConnect stock. She testified that, as she became interested in particular stocks, she researched them online, learning about

---

[3]Sayre argues that we should review under the less deferential *Jackson* standard, as it would have been futile for him to renew his motion. Unlike in *United Esquivel-Ortega*, 484 F.3d 1221, 1225 (9th Cir. 2007), however, where the defendant had just moved for acquittal and argued extensively a few minutes earlier, in this case Sayre put on numerous witnesses over five days after raising and losing his first motion for a judgment of acquittal.

the companies, the companies' products, and what others in the marketplace were saying. She was savvy enough to be wary of posts on Raging Bull, and to look to opinions from analysts who do *not* have a financial interest in the stocks they are analyzing. The witness was mistaken in thinking that her market order would be fulfilled immediately, but that mistake by itself does not render her an unreasonable investor. Through her testimony, the government presented evidence that the witness had researched the information publically available about eConnect, and had concluded that the IFR opinions were important and significant because IFR represented it had no financial interest in eConnect.

Sayre's reports were the only opinions about eConnect that both touted eConnect's stock and purported to be entirely independent. Unlike in *United States v. Bingham*, 992 F.2d 975, 976 (1993) (per curiam), here the evidence demonstrated a substantial likelihood that the disclosure of Sayre's trading, and especially his sale of shares while he was touting the stock, would have been viewed by the reasonable investor as having significantly altered that "total mix," as Sayre argued, or as important in deciding whether to buy, sell, or hold eConnect stock, *see Basic*, 485 U.S. at 231-32. Certainly there was no plain error or manifest miscarriage of justice, *see Gonzalez*, 528 F.3d at 1210.

**VI.**

7

Because the district court did not commit any of the errors Sayre alleges, Sayre was not denied due process by the cumulative effect of multiple errors. *See Montana v. Egelhoff*, 518 U.S. 37, 53 (1996); *United States v. Wright*, 625 F.3d 583, 619 (9th Cir. 2010).

**AFFIRMED.**